(53 Misc. Rep. 280)

### LIPSCHITZ v. HALPERIN et al.

### LEVINE v. SAME.

(Supreme Court, Appellate Term. March 14, 1907.)

1. FRAUDULENT CONVEYANCES — EXECUTION SALE — COLLUSIVE JUDGMENT — RIGHTS OF PURCHASER.

That a judgment was obtained by collusion between the parties with intent to defraud the defendant's creditors will not affect the title acquired by another buying property at the execution sale under the highest bid and for an adequate price.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 518.]

2. ATTACHMENT—CLAIMS OF THIRD PERSONS—ESTABLISHMENT—EVIDENCE.

That the purchaser of chattels at an execution sale was a brother-in-law of the execution debtor, that the debtor's father-in-law's name was on the door where the goods were kept by the purchaser, that the latter was not engaged in a business to which the chattels would be suited, that the debtor had them in his possession and was selling them at the time plaintiffs attached them as the debtor's property, and that the debtor's brothers secured the purchaser's bond to retain the property, was not evidence of a transfer of the property from the purchaser to the debtor after the execution sale, so as to warrant an attachment of it as the property of the debtor.

3. SAME—BURDEN OF PROOF.

Where a third person showed that he acquired title to property attached as that of a debtor, the burden was upon the attaching creditors to show that he had devested himself of that title by facts or circumstances from which a transfer could be inferred.

4. EVIDENCE—CONCLUSION—OWNERSHIP OF PROPERTY.

Where the ownership of chattels on a fixed date was in issue, it was improper to exclude the question, "To whom did the property belong?" asked one who claimed to be the owner.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Actions by Meyer Lipschitz and by Abraham Levine against Simon Halperin and others. From judgments for plaintiffs, defendants appeal. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAVIS and HENDRICK, JJ.

Emanuel Klein, for appellants.
Joseph Wilkenfeld, for respondents.

HENDRICK, J. These actions were tried together, and the plaintiffs recovered judgments, from which the defendants appeal.

The following facts are undisputed: One Nathan Halperin being indebted to the plaintiffs herein for goods sold and delivered to him,

actions were commenced by them in the Municipal Court, warrants of attachment were issued, and on or about April 12, 1906, levies were made upon property claimed by the plaintiffs to be the property of Halperin. One Berman also claimed ownership of said property, and, proceeding under the authority conferred by section 85 of the Municipal Court act (Laws 1902, p. 1517, c. 580), gave bonds, and the property was delivered to him by the marshal. The condition of bonds given in such cases is that:

"In an action upon the bond, to be commenced within three months thereafter, the claimant will establish that he was the general owner of the property claimed at the time of the seizure, or, if he fails so to do, that he will pay to the plaintiff the value thereof, with interest."

These actions were brought against the defendants, the obligors in the bond. Upon the trial the defendants proved that upon March 12, 1906, in a judgment recovered by one Phillips against said Nathan Halperin, an execution was issued and a levy made thereunder upon the same property levied upon in the attachment suit, and that at a subsequent sale at public auction, duly advertised, at which numerous bidders were present, said Berman bid off the property for the sum of $300, which sum he paid to the marshal making the sale and took his receipt therefor. It was also shown that prior to the sale Berman had refused to loan Halperin money with which to pay the Phillips judgment and thus prevent the sale under execution. This sale took place on or about March 18, 1906, as appears by the record, being about three weeks prior to the levy made under the plaintiffs' attachments.

If we should assume, of which there is not the slightest evidence, that the Phillips judgment was collusive between Phillips and Halperin, and given with the intent to hinder, cheat, and defraud creditors, the evidence is conclusive that Berman obtained title to the property in question by virtue of his purchase as aforesaid. A purchaser of goods under execution sale at public auction, he being the highest bidder and paying an adequate price, is in an entirely different position from that of a purchaser at private sale from an insolvent vendee, knowing of his insolvent condition. Unless, therefore, it was shown that Berman had in some manner been divested of, and Halperin reinvested with, title to the property between the date of the execution sale and the time of its seizure under the attachments, the defendants should have had a judgment. As to this there was not the slightest direct evidence. The plaintiffs offered testimony to the effect that the goods were removed from Halperin's place of business to Prince street after the auction sale; that at the time the levy under the attachments was made Halperin was present; that the name of Weiser, the father-in-law of Halperin, was on the door of the room where the goods were when seized; that Berman's name was not on the door; that Berman and Halperin were brothers-in-law; that Halperin paid wages to certain employés; that Berman was engaged in the rag business, and not in the business of manufacturing purses, which the goods levied upon were used for; that Halperin had these goods in his possession, and was engaged in selling them at the time of the levy; that Berman did not go into the leather business; and

that Halperin's two brothers were the obligors in the bond; and these circumstances are evidently urged as showing a fraudulent transfer from Berman to Halperin of the property in question after the purchase by Berman at the execution sale.

Such facts clearly have no bearing upon the bona fides of Berman's purchase at the auction sale, and we do not think that they are any evidence of a transfer of the property from Berman to Halperin after such sale. As we have seen, Berman is shown to have been a purchaser in good faith and for value at the auction sale. All of the acts shown to have been done regarding the property so purchased by him after such purchase are equally consistent with ownership in him as they are to a transfer of title by him. Berman had a perfect right to place the goods in Halperin's possession and to permit him to sell the same, and such acts are not evidence of a transfer of title to Halperin under the circumstances of this case. The plaintiffs do not stand in the position of bona fide purchasers of property from a fraudulent vendee to whom a vendor has passed the title and possession of property, as in such a case, if the vendor intended to part with the title and has delivered the possession of the property to a fraudulent vendee, thus enabling him to perpetrate a fraud upon an innocent third person, the original vendor must be the loser. Here the plaintiffs attempted to and did seize property by virtue of an attachment, and, when the claimant showed himself to be the owner, it was incumbent upon the plaintiffs to show that he had divested himself of his title; and such evidence must be facts or circumstances from which it can fairly be inferred that such transfer was made. Upon this pivotal issue the judgment is clearly against the weight of evidence. As there must be a new trial, it may be well to say that we do not regard the point made by the appellants, that the action was not begun within three months, or that his refusal of the right of last summing up to the jury was error, is of any weight.

Reversible error, however, was committed in excluding the following testimony offered on the part of the defendants. Berman was asked, "To whom did that property in Prince street belong on or about the 12th of April, 1906?" that being the time the marshal came to make the levy. The plaintiffs' counsel objected to this as calling for the conclusion of the witness and incompetent. The court said:

"You mean the property that is in question?

"Defendants' Counsel: Yes, the property in question—the property the marshal took that day up there on the writ of attachment.

"The Court: I shall sustain it as a conclusion. It is shown he purchased it, is it not? He purchased and paid $300 for it.

"Defendants' Counsel: Not only this; I want to show he had other property there in addition to the property.

"The Court: That you might go into, but that property you have shown he purchased and paid $300 for. Now, the legal conclusion would be that it naturally belonged to him, but it is not for him to say it. I shall sustain the objection in that."

The ownership of property is always a question of fact and the testimony called for was competent. Pichler v. Reese, 171 N. Y. 577, 64 N. E. 441; De Wolf v. Williams, 69 N. Y. 621; Nicolays v. Unger,

80 N. Y. 54; Sweet v. Tuttle, 14 N. Y. 465; Davis v. Peck, 54 Barb. 425.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.